# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

BAYVIEW LOAN SERVICING, LLC, a Delaware
limited liability company, DAVID ERTEL
BRIAN BOMSTEIN, ANTONIO CHIMIENTI,
MICHAEL B. GUSS, ROBERT PONDOLFI,
THOMAS CARR, LAWRENCE A. HALPERN,
TABAS, FREEDMAN & SOLOFF, P.A.,
JOEL LLOYD TABAS, GARY M. FREEDMAN,
AND STACY F. SOLOFF,

Case Docket No.:

        Plaintiffs,

v.

INTERNATIONAL COURT OF COMMERCE,

        Defendant.

_____/

## COMPLAINT FOR
## DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

Bayview Loan Servicing, LLC, David Ertel, Brian E. Bomstein, Antonio Chimienti, Michael B. Guss, Robert Pondolfi, Thomas Carr, Lawrence A. Halpern ("Bayview Plaintiffs"), Tabas, Freedman & Soloff, P.A., Joel Lloyd Tabas, Gary M. Freedman, and Stacy F. Soloff ("Counsel Plaintiffs") (collectively "Plaintiffs") file this action for declaratory judgment and injunctive relief against the International Court of Commerce and in support state: [1]

---

[1] In addition to the fact that the International Court of Commerce lacks jurisdiction over Plaintiffs or the putative subject dispute, Plaintiffs do not waive any defenses they have to the claims set forth in Randall T. Rosado's request for arbitration filed with the International Court of Commerce, Case Docket No.: ICC-16-0010126.

1

**PRELIMINARY STATEMENT**

This case arises from a fraudulent request for arbitration (the "Request") submitted by Claimant, Randal T. Rosado, a purported "American non-citizen national," with the International Court of Commerce,[2] an unrecognized and illegitimate dispute resolution center lacking in jurisdiction over the parties.

As will be more fully set forth below, the International Court of Commerce lacks jurisdiction over the parties. Aside from being a sham institute, no adjudication agreement was executed by the parties, as required by this institute's rules. *See* Rule VI, Rules of the International Court of Commerce. Put simply, no agreement consenting to this center's jurisdiction or to alternative dispute resolution has been executed. Of equal significance and dispositive character is that Mr. Rosado, did not even attempt to mitigate this shortcoming by alleging that such arbitration clause exists. Indeed, there is no (i) arbitration clause or (ii) allegation that such clause exists, vesting this International Court of Commerce with jurisdiction over Plaintiffs. The frivolous Request for arbitration and/or adjudication that Mr. Rosado filed with the International Court of Commerce is altogether wanting an arbitration clause, is but the most recent of tortious predicate acts of stalking that Mr. Rosado has directed at the Bayview Plaintiffs, and now, their counsel.

Because a Request for arbitration was filed by Mr. Rosado against Plaintiffs under the International Court of Commerce's rules for $8,730,000, however, a Request which the Counsel Plaintiffs have confirmed was duly received and processed by the center,[3] and an award issued

---

[2] The International Court of Commerce refers to itself as the "ICC" throughout its website in an apparent attempt to confuse individuals accessing the site into believing that the center is the International Chamber of Commerce (*i.e.,* the ICC), an established and reputable arbitration center located in Paris, France.

[3] On March 4, 2016, Mr. Freedman's assistant left a message for the International Court of Commerce at the District of Columbia telephone number listed on their website regarding whether the center had a record of Mr. Rosado's action. On March 8, 2016, an individual identifying herself as Gwen Miller from the International Court of Commerce returned the call to Mr. Freedman's assistant and confirmed that Mr. Rosado had in fact filed an action in

in *absentia* by the center against Plaintiffs could be deemed valid and enforceable in a United States federal district court. Accordingly, a declaration stating that the International Court of Commerce has no jurisdiction over the parties and permanently enjoining it from proceeding with this matter is compelled.

### Jurisdiction and Venue

1. This Complaint seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

2. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) because the plaintiffs and defendant are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and (2) because the defendant is located in the District of Columbia and a substantial part of the events or omissions giving rise to the claims occurred in the District of Columbia.

### Parties

4. The International Court of Commerce is a purported "Court of Record established under the Common Law, [that] provides an alternate dispute resolution forum for the adjudication of judicial and administrative proceedings," with its principal place of business located at 1300 Pennsylvania Ave. NW #190-324, Washington, DC 20004. *See* http://www.courtofcommerce.org/index.html. The International Court of Commerce is an unincorporated association. Upon information and belief, its members are residents of the District of Columbia.

---

the center and that it was active. Ms. Miller also apologized for the delay in returning the call and volunteered that she is the only person "in the small office" and that she is a "go between for everyone."

5. Bayview Loan Servicing, LLC is a limited liability company formed under the laws of the State of Delaware with its principal place of business in Coral Gables, Miami-Dade County, Florida.  Bayview Loan Servicing, LLC's owners/members are all citizens of the state of Florida.

6. David Ertel is a Florida resident who resides in Miami-Dade County, Florida and is an officer of Bayview.

7. Brian E. Bomstein is a Florida resident who resides in Broward County, Florida and is an officer of Bayview.

8. Antonio Chimienti is a Florida resident who resides in Broward County, Florida and is an officer of Bayview.

9. Michael B. Guss is a Florida resident who resides in Miami-Dade County, Florida and is an officer of Bayview.

10. Robert Pondolfi is a Florida resident who resides in Miami-Dade County, Florida and is an officer of Bayview.

11. Thomas Carr is a Florida resident who resides in Miami-Dade County, Florida and is an officer of Bayview.

12. Lawrence A. Halpern is a Florida resident who resides in Broward County, Florida and is an officer of Bayview.

13. Tabas, Freedman & Soloff, P.A. ('TFS") is a Florida corporation with its principal of business in Miami-Dade County, Florida and regularly represents Bayview.

14. Joel Lloyd Tabas is a Florida resident who resides in Miami-Dade County, Florida, is a Florida licensed attorney and an employee of TFS.

15. Gary M. Freedman is a Florida resident who resides in Miami-Dade County, Florida, is a Florida licensed attorney and an employee of TFS.

16. Stacey F. Soloff is a Florida resident who resides in Broward County, Florida, is a Florida licensed attorney and an employee of TFS.

17. Randall T. Rosado is a Florida resident who resides in Palm Beach County, Florida.

18. Plaintiffs are all parties to the illegitimate International Court of Commerce action initiated by Mr. Rosado, as described in more detail below.

## BACKGROUND

**The International Court of Commerce**

19. The International Court of Commerce holds itself out on its website as "a Court of Record established under the Common Law, [that] provides an alternate dispute resolution forum for the adjudication of judicial and administrative proceedings." *See http://www.courtofcommerce.org/index.html.* The center claims that it "is a party to the *Convention of the Recognition and Enforcement of Foreign Arbitral* Awards" and that its "role is as an Alternative Dispute Resolution forum [that] has jurisdiction, *inter alia*, to resolve: commercial disputes through administrative proceedings, judicial determinations, arbitration and/or mediation." *Id.* The center maintains that its "[p]roceedings are executed, governed, and construed in accordance with the governing laws of the contract and common law, and guided but not bound by private international law, the Uniform Commercial Code, UNCITRAL and Law Merchant." *Id.*

20. The International Court of Commerce's website provides the "Court's Rules" governing any action brought in the center, sample papers, and the center's fee schedule. *See http://www.courtofcommerce.org.* Parties are required to file papers using the center's E-File Portal system. According to the center's website, the International Court of Commerce is

located at 1300 Pennsylvania Avenue NW #190-324, Washington, DC 20004 and is open Monday through Friday from 10:30 a.m. to 3:30 p.m. EST.

21. Under Rule VI of the International Court of Commerce's Rules, parties must execute a binding "Adjudication Agreement," as provided by the International Court of Commerce, submitting to the center's exclusive jurisdiction. The "Adjudication Agreement" provided for by the center unambiguously states that "[t]he adjudication process will commence immediately after the International Court of Commerce and the Petitioner(s) to the commercial dispute. . . execute the International Court of Commerce Adjudication Agreement. . . ." *See* Sample Adjudication Agreement, attached as Exhibit A, at 1.6.

**The Request**

22. On February 16, 2016, Mr. Rosado, a purported "American non-citizen national," filed unilaterally the Request for arbitration with the International Court of Commerce without Plaintiffs' prior knowledge or consent seeking to effectuate baseless commercial liens and purported damages in the amount of $8,730,000, as part of a larger scheme of harassment. *See* Request, attached as Exhibit B; *see also* Letter from Stacey F. Soloff to Randal Thomas Rosado, dated December 11, 2014, attached as Exhibit C. Notably, the requisite arbitration clause or "Adjudication Agreement," demonstrating the parties' agreement to submit all disputes arising from the alleged operative documents to the jurisdiction of this or any other dispute resolution center, was not attached to the Request and does not at all otherwise form part of the Request. The reason underlying this material omission is simple enough. There is no such agreement. None exists. Nor is one averred to exist.

23. On March 1, 2016, purported Notary Public, Amanda Halligan, mailed an Affidavit of Notary Presentment (the "Affidavit") together with a copy of the Request to each Plaintiff here

identified in a failed attempt to perfect service of process. The purported Affidavit does not constitute legally binding service of process under the rules of *any* tribunal and is legally insufficient on its face. The Affidavit merely certifies that the purported Notary Public "personally verified that the [summonses for all Respondents, the Request and the Affidavit] were placed in an envelope and sealed by [her]. They were sent by United States Post Office via Certified Mail. . . ." *See* Affidavit, attached as Exhibit D. The Notary Public, however, does not certify from whom she received these documents, who directed her to place the documents in an envelope and mail them, who directed her to complete the Affidavit, and on whose behalf she sent them. Even these basic indicia of reliability are absent. Moreover, the purported referenced summonses do not even comport with the center's required form.

24. On March 8, 2016, Counsel Plaintiff, Gary M. Freedman, sent a letter to the International Court of Commerce Secretariat General, A. Weiss, via Federal Express acknowledging receipt of the Request and challenging the center's jurisdiction over the parties. The letter requested that the Secretariat "immediately inform [Respondents] in writing as to the validity of the Purported Action." *See* March 8, 2016 Letter from Gary M. Freedman to International Court of Commerce, attached as Exhibit E. The request was "made with a complete reservation of all rights," clarifying that "Respondents do not waive any defenses to the Purported Action including, but not limited to, lack of subject matter and personal jurisdiction and failure of service of process." *Id.*

25. Mr. Freedman further advised that "Claimant is a defendant in a foreclosure action brought by Bayview in the Supreme Court of the State of New York, County of Orange. But none of the Purported Respondents have ever consented to alternative dispute resolution with

Claimant, including alternative dispute resolution through the International Court of Commerce."  *Id.*

26. As of the date of the filing of this paper, no response has been received.

27. On March 14, 2016, Mr. Freedman sent a subsequent letter to the Secretariat via Federal Express, once again under the reservation of rights, objecting anew to this center's jurisdiction and demanding "immediate written notice that the ICC will not be proceeding with the Purported Action." *See* Letter from Gary M. Freedman to International Court of Commerce, attached as Exhibit F.  Mr. Freedman further demanded that because "no adjudication agreement [had] been provided to the ICC, [Respondents] expect[ed] such written notification within five days from the date of [the] letter." *Id.*

28. The International Court of Commerce's response was due on March 21, 2016.  To date, no response has been received.

29. Under Rule V of the International Court of Commerce, Plaintiffs' response to the Request would have been due on March 31, 2016.

**Plaintiffs' Objection to Jurisdiction**

30. Accordingly, on March 29, 2016, Plaintiffs filed a Motion for Extension of Time, Objection to Jurisdiction, and Notice of Intent to File Federal Action for Declaratory and Injunctive Relief (the "Motion") with the International Court of Commerce demanding that the center issue a formal, binding opinion, unequivocally stating that it does not have jurisdiction over the parties and dismissing the action within seven days from the date of the Motion, by no later than April 5, 2016, at 5:00 p.m. EDT.  *See* Motion (exhibits omitted), attached as Exhibit G. Plaintiffs further explained that should the International Court of Commerce fail to issue a formal binding order stating that it lacks jurisdiction over the parties, Plaintiffs would immediately file

an action with the federal district court of the District of Columbia, seeking a declaratory judgment that the International Court of Commerce does not have jurisdiction over the parties and enjoining it from proceeding with the action as filed, and seeking all attorneys' fees and costs associated with bringing the federal action.  In this vein, the Motion further requested a one hundred twenty day extension of time, up to and including July 27, 2016, in which to secure a federal court adjudication.  The International Court of Commerce did not issue the requested order or otherwise respond to Plaintiffs' Motion.

31. The Motion was filed via the International Court of Commerce's E-File Portal system[4] and sent both to the center's office in the Ronald Regan Building and International Trade Center, a federal building owned by the United States General Services Administration located in the District of Columbia, and its appellate division in Michigan by Federal Express.[5]  A copy was also served on Mr. Rosado at his home address in Florida by Federal Express.

32. No response to the Motion was received from the International Court of Commerce.

33. On April 6, 2016, counsel for Plaintiffs contacted the International Court of Commerce at the District of Columbia telephone number listed on their website and left a detailed voicemail message related to Mr. Rosado's purported Request and Plaintiffs' corresponding Motion, explaining that the International Court of Commerce does not have jurisdiction over the matter and restating Plaintiffs' intent to file a federal action for declaratory and injunctive relief should the International Court of Commerce fail to issue a binding order and dismiss the action.  Counsel requested an immediate response.  Counsel also sent the International Court of

---

[4] *See* International Court of Commerce E-File Portal site at http://www.courtofcommerce.org/efile.php.
[5] According to the International Court of Commerce Rule XXV, the center's appellate division is located at "2885 Sanford Ave, # 30964, Grandville, Michigan, Near. [49418]."  *See* International Court of Commerce Rules, at Rule XXV, attached as Exhibit H.

Commerce a detailed email message via its online messaging system reiterating the same proposition. No response was received.

34. That afternoon, however, counsel received a letter from an institution calling itself the "American Consulate," which purports to be an " Embassy of Foreign Affairs for Native Americans and American Nationals," accusing her and her colleague of numerous violations, including but not limited to violations of the Universal Declaration of Human Rights, treason, and anti-trust violations stemming from undersigned's filing of the Motion on behalf of Plaintiffs with the International Court of Commerce. *See* American Consulate letter, dated April 6, 2016, attached as Exhibit I; *see also* the American Consulate website, at http://www.americanconsulate.org. This letter also was sent to several of counsel's colleagues in different offices throughout the firm, including in Missouri, New York and London, England, as well as to the Missouri Office of Risk Management, the Missouri Secretary of State, and the Office of the United Nations High Commissioner for Human Rights in Geneva, Switzerland.

35. Demonstrating that the International Court of Commerce had received *at least* one of counsel's messages, and that the International Court of Commerce and Mr. Rosado are working in tandem, the letter specifically referenced counsel's April 6, 2016, initial telephone message to the International Court of Commerce stating that "[the American Consulate] was also provided with a voicemail from earlier today where tortfeasor, [counsel for Plaintiffs] Tania Cruz, verbally threatens the court with action and provides an ultimatum."[6] *See* American Consulate letter, dated April 6, 2016, attached as Exhibit I.

---

[6] A similar letter signed by the same individual was sent on behalf of the so-called "American Consulate" to the clerk of the U.S. District Court for the Southern District of Iowa demanding *inter alia* documents and that several matters be judicially noticed arising from a US Marshall's refusal to grant a purported "American non-US citizen national" access to the district court for failure to have the proper identification. *See* American Consulate Letter to District Court, dated January 13, 2016, attached as Exhibit J.

36. On April 7, 2016, counsel left two additional voicemail messages for the International Court of Commerce and another online message. No response was received.

37. On April 8, 2016, counsel left two more voicemail messages and one written message via the center's online messaging system. Again, no response was received.

## **COUNT I – DECLARATORY JUDGMENT**

41. While the International Court of Commerce appears to be a sham institution wanting in jurisdiction, that does not preclude it from potentially recording commercial liens on Plaintiffs' real and personal property and issuing a binding award for $8,730,000 against Plaintiffs in *absentia* on behalf of Mr. Rosado, which Mr. Rosado will then seek to enforce in a United States federal district court. Accordingly, there is a case and controversy and an actual present need for a declaration by this Court as to the International Court of Commerce's jurisdiction over Plaintiffs, including its right to proceed with the underlying arbitral action and issue any award against Plaintiffs.

42. There is a bona fide, actual, present and practical need for a declaratory judgment because Mr. Rosado's Request filed with the International Court of Commerce has exposed Plaintiffs to significant potential liability. Plaintiffs' request for a declaratory judgment deals with present, ascertained or ascertainable facts or a present controversy as to the facts described herein. Plaintiffs' ability to continue to manage and convey their real and personal property, to avoid a joint and several damage award in the amount of $8,730,000, and otherwise be free from Mr. Rosado's actual and threatened fraudulent activities, and his campaign of harassment is dependent upon a determination by this Court as to the jurisdiction of the International Court of Commerce.

43. The relief sought herein is not the mere giving of legal advice by the courts or the answer to questions propounded from curiosity.  As described above, Mr. Rosado has incited an actual controversy by submitting a Request with the International Court of Commerce asserting commercial liens against Plaintiffs' real and personal property in the amount of $8,730,000 and his attempts to compel them to arbitrate the claims asserted in his Request or otherwise obtain a fraudulent judgment in an illegitimate forum that lacks jurisdiction, rendering Plaintiffs unsure of their legal rights and obligations and causing Plaintiffs actual and ongoing irreparable harm.

## COUNT II – PERMANENT INJUNCTION

45. Further necessary or proper relief based on a declaratory judgment against the International Court of Commerce is warranted.  Plaintiffs will suffer irreparable harm unless this Court issues an injunction, permanently enjoining the International Court of Commerce from exercising jurisdiction over Plaintiffs in the matter filed by Mr. Rosado with that center.

46. The threatened injury to Plaintiffs in the form of *inter alia* the recording of commercial liens on Plaintiffs' real and personal property and the issuing of a binding award against Plaintiffs and in favor of Mr. Rosado in the amount of $8,730,000 outweighs any threatened harm the injunction may cause the International Court of Commerce.

47. Plaintiffs have inadequate remedies at law to compensate them for their injuries. Considering the balance of hardships between Plaintiffs and the International Court of Commerce, a remedy in warranted.  The public interest will not be disserved by a permanent injunction enjoining the International Court of Commerce from asserting jurisdiction over Plaintiffs.

WHEREFORE, Plaintiffs respectfully request this Honorable Court:

a. enter a Final Declaratory Judgment determining that the International Court of Commerce does not have jurisdiction over Plaintiffs;
b. permanently enjoining the International Court of Commerce and its agents, servants, and employees from (i) pursuing Mr. Rosado's action and (ii) issuing an award against Plaintiffs, whether jointly or severally;
c. retain jurisdiction of this matter for the purpose of enforcing this declaratory judgment and injunction; an
d. award of all attorneys' fees and costs associated with bringing this action; and
e. such further relief as the Court deems just and proper.

Dated: April 18, 2016

Respectfully submitted,

**BRYAN CAVE LLP**

By: /s/ Alec W. Farr
**Alec W. Farr**
D.C. Bar No. 440046
BRYAN CAVE LLP
1155 F Street, NW
Washington, DC  20004
Telephone:     (202) 508-6000
Facsimile:      (202) 508-6200
**Pedro J. Martinez-Fraga**
DC Bar No. 426309
pedro.martinezfraga@bryancave.com
**Tania Cruz**
Florida Bar No. 899151
Tania.Cruz@bryancave.com
200 S Biscayne Blvd. Suite 400
Miami, FL 33131-2302
Telephone: (786) 322-7375
Fax: (786) 322-7475

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on the 18th of April, 2016, the foregoing motion was served upon Randall Thomas Rosado via Federal Express at the address listed below:

Randall Thomas Rosado
340 Royal Poinciana Way #317-141
Palm Beach, Florida 33480

                                                /s/ Alec W. Farr
                                                **Alec W. Farr**